O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6 (LC)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present  Not Present

**Proceedings:**   **(In Chambers) Order Findings of Fact and Conclusions of Law Following Bench Trial**

A bench trial was held in this matter on January 22, 2013 and February 19, 2013. After considering the evidence offered at trial, the arguments of the parties, and the relevant law, the Court finds that Defendant violated the Americans with Disabilities Act of 1990 ("ADA") in relation to one alleged barrier of access, and thus also violated California's Disabled Persons Act ("DPA") and California's Unruh Civil Rights Act ("Unruh Act") in relation to that barrier. However, Plaintiff did not prove that he suffered any "difficulty, discomfort, or embarrassment" in relation to this barrier and therefore is not entitled to statutory damages under the Construction Related Accessibility Standards Compliance Act ("CRAS"), which governs the DPA and Unruh Act.

I.   Background and Procedural History

Plaintiff Chris Kohler ("Plaintiff") uses a wheelchair as a result of a physical disability. *FAC* ¶ 8. On June 16, 2010, Plaintiff visited an Eddie Bauer outlet store ("the Store") in Cabazon, California, where he claims to have encountered a number of physical barriers or architectural features that prevented him from enjoying full and equal access to the Store. Those barriers allegedly included: (1) a checkout counter that was too high to accommodate a patron in a wheelchair, (2) a pay point machine that was also too high, (3) a dressing room bench that was not appropriately long and wide, (4) the absence of an International Symbol of Accessibility ("ISA") sign at the Store's entrance to indicate that the Store was accessible to him, and (5) aisles that were too narrow to allow Plaintiff to pass. *See FAC* ¶ 11.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

Shortly after his visit to the Store, Plaintiff filed this suit against Defendant Eddie Bauer, LLC ("Defendant"). Dkt # 1.[1] Based on the five barriers allegedly encountered during his visit to the Store, Plaintiff asserts claims against Defendant for (1) discrimination in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), (2) discrimination in violation of California's Disabled Persons Act ("DPA"), (3) violation of California's Unruh Civil Rights Act, and (4) violation of California Health and Safety Code § 19955, *et seq.* FAC ¶¶ 9-53.

On July 26, 2011, Defendant moved for summary judgment on all of Plaintiff's claims. *See* Dkt # 91. On September 27, 2011 the Court denied Defendant's Motion for Summary Judgment as to all claims. Dkt. # 115. A bench trial was conducted on January 22, 2013 and February 19, 2013.

II.   Findings of Fact

Considering all of the evidence presented at trial, the Court makes the following factual findings.

   A.   Barrier 1: Checkout Counter Too High to Accommodate Patron in Wheelchair

Plaintiff alleges the checkout counter is too high with no portion lowered to accommodate a patron in a wheelchair. *FAC* ¶ 11. Plaintiff alleges that without a lowered counter, Plaintiff cannot access the goods and services offered at the Store. *FAC* ¶ 11.

The checkout counter has two checkout stations. Plaintiff testified that he "believed" the counter was 39 inches high. He further stated that his lap was "roughly 27 inches high," and that it is difficult for him to lift something a foot higher than his lap, implying that is how he knew the counter was 39 inches high. Plaintiff never took measurements of the counter height until one week prior to trial, and attempted to submit pictorial evidence in trial regarding the height of

---

[1] Plaintiff also sued Presidio International, Inc.; Banana Republic, LLC; Barney's, Inc.; Billabong Retail, Inc.; Converse, Inc.; The Donna Karan Company Store, LLC; PHV Retail Stores, Inc.; Grace Holmes, Inc.; Jockey International Global, Inc.; Cole Grant, Inc.; Nike Retail Services, Inc.; RL Fashions of Cabazon CA, LLC; Q's Retail, Inc.; Phillips-Van Heusen Corp.; Volcom Retail, Inc.; and Zumiez Inc. All of those defendants were dismissed prior to trial. *See* Dkts. # 36, 41, 48-64, 70-72.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

the checkout counter.  Plaintiff's expert also never took measurements of the counter height.  The counter can be approached from the front or the side, and there is a doorway and opening on the side of the counter.  *Ex. 69, 100-2*.  Employees serve customers from both the front and side of the counter.

Plaintiff testified that it is difficult for him to function effectively with a 39-inch counter because he can only raise one arm over his head at a time because of his paralysis.  Plaintiff testified that trying to lift something a foot higher than his lap is difficult, that he needs to be able to hold on to something with one arm in order to raise his other arm, and that functioning with Defendant's counter is difficult because of its height.  Plaintiff did not ask for help during his visit, and although he does not like to ask for assistance because he likes to be independent, he has done so in the past and has no problem doing so if needed.  Plaintiff was neither humiliated nor embarrassed when using the counter during his June 16, 2010 visit, but would have liked the counter tops more accessible to him so that he could lean and write on them.

Defense witness Sara Miluso has been the store manager of the Store since July 2010 and has been a store manager for other Eddie Bauer stores for the past three years.  Miluso testified about the universal policies of Eddie Bauer stores, including the Store in question and those she worked at previously.  Given that Miluso began managing the Store only one month after Plaintiff's visit and is knowledgeable about the universal store policies that applied to Eddie Bauer stores when Plaintiff's visit occurred, this Court finds Miluso's testimony regarding the subject Eddie Bauer Store's policies will be applicable to the time when the incident occurred.

Miluso testified that it is the Store's policy to try and approach customers as they are heading towards the check-out stations and take the articles of clothing from their hands.  Plaintiff testified that he observed customers passing articles of clothing across the counter to the cashiers.

Plaintiff purchased a shirt on June 16, 2010.  *Ex. 3-1*.  The cashier took the shirt off Plaintiff's lap, and Plaintiff paid with cash.  Plaintiff did not consider using a credit card or ATM card because he was unable to reach the countertop to sign the receipt.  Plaintiff did not see any clipboards available at the counter, and did not request one.  There was no sign posted on the June 16, 2010 visit that clipboards or alternative writing surfaces were available.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

Miluso testified that clipboards have been available at the counter since she started managing the Store and that this policy pre-dated her arrival as store manager. Miluso testified that clipboards are used in the Store if requested, or if a clerk observes that clipboards are needed. Moreover, the Store has a policy of reaching across the counter and taking the form of payment from the customer so that the customer is not required to reach over the counter.

A sign was posted on the side of the counter in January 2011, which states, "if you require a lower writing surface, please let us know and we will provide an alternative," and depicts an ISA sign. *Ex. DG-85.*

B.      Barrier 2:  Pay Point Machine Was Too High

Plaintiff alleges the pay point machine is too high, thus making the machine difficult and/or impossible for Plaintiff to use. *FAC* ¶ 11.

Plaintiff did not observe a pay point machine during his June 16, 2010 visit, nor did he observe a pay point machine during the eight or nine later visits he made to the Store. Miluso testified that the Store has never had a pay point machine during her time as store manager, and to her knowledge the Store never has had a pay point machine.

C.      Barrier 3:  Dressing Room Bench Was Neither Appropriately Long nor Wide

Plaintiff alleges that the dressing room bench is not 24 inches wide by 48 inches long. *FAC* ¶ 11. Without a bench that is 48 inches long, there is not space at the end of the bench that would allow Plaintiff to make a diagonal transfer. *FAC* ¶ 11.

There is no dispute that the dressing room bench is 60 inches long and spans the entire length of the wall, which was corroborated by Plaintiff's testimony and pictorial evidence. *Ex. 73.* Plaintiff testified that he would have tried on pants if there had been space at the end of the bench for him to make a diagonal transfer. Plaintiff generally looks for space in a dressing room before deciding to try pants on. Plaintiff was able to try on a shirt in the dressing room, which he later purchased. Plaintiff was neither humiliated nor embarrassed when using the dressing room during his June 16, 2010 visit, but would have liked space between the bench and the wall to allow for an easier transfer. Plaintiff testified that he would have been able to make the transfer from his wheelchair onto the dressing room bench.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

    D.    <u>Barrier 4: Absence of an International Symbol of Accessibility ("ISA") Sign</u>

    Plaintiff alleges that there is no International Symbol of Accessibility ("ISA") sign mounted at the entrance of the Store that would indicate to Plaintiff that the facility is accessible. *FAC* ¶ 11.

    It is undisputed that there was no ISA sign mounted at the entrance of the Store on Plaintiff's June 16, 2010 visit. *See* Dkt. # 97-1. Plaintiff had no problem entering the Store. The lack of an ISA sign did not cause any embarrassment or humiliation for Plaintiff, but he felt it indicated a lack of respect. Plaintiff visited other stores that day with no ISA sign. Plaintiff has never been deterred from going into a store because an ISA sign was not mounted at the entrance, and experienced no difficulty entering the Store despite the lack of the sign. An ISA sign was mounted to the front entrance in January 2011. *Ex. 68.*

    E.    <u>Barrier 5: Aisles That Were Too Narrow to Allow Plaintiff to Pass</u>

    Plaintiff alleges the aisles throughout the Store are too narrow because merchandise in the aisles blocked Plaintiff's ability to travel through the Store. *FAC* ¶ 11.

    Plaintiff testified that there was "too much clothing on the floor" during his June 16, 2010 visit, which made it difficult for him to maneuver through the Store. Plaintiff testified that on his latest visit to the Store, he had enough space to maneuver through the Store.

    No merchandise was fixed to the floor of the Store during Plaintiff's visit. Plaintiff never measured the width of the aisles nor identified which aisles were too narrow for him to pass. Plaintiff testified that the majority of the Store was accessible to him. Plaintiff testified there were some aisles that were wide enough to accommodate him, and as to the aisles that were not wide enough, he never asked for merchandise to be moved. Plaintiff was neither humiliated nor embarrassed due to the width of the aisles during his June 16, 2010 visit, but would have liked the aisles to be free of clutter so he could more easily move around.

    Miluso testified that it is the Store's policy to maintain 48-inch aisles. The racks located throughout the Store are on wheels and are easily movable. The tables are not on wheels but can be moved in seconds. Defendant offered pictorial evidence of the Store's typical layout, which showcases aisles wide enough to accommodate a wheelchair. *Ex. 76.* Sometimes merchandise

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

is on the floor of the Store. Merchandise on the floor is contrary to Store policy. If clothing falls on the floor, it is easily movable.

III.     Conclusions of Law

    A.     ADA

The ADA was enacted to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The scope of the ADA encompasses discriminatory effects of facially neutral practices and barriers. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996); 42 U.S.C. § 12101(a)(5). Title III of the ADA prohibits discrimination against individuals in any place of public accommodation. 42 U.S.C. § 12182. Liability is imposed upon "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates against an individual on the basis of disability. *Id.*

    *i.     Architectural Barriers*

Discrimination under the ADA includes the failure to remove "architectural barriers" in existing facilities where such removal is "readily achievable." § 12182(b)(2)(A)(iv). Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." § 12181(9). Compliance with the ADA's antidiscrimination mandate requires that facilities be "readily accessible to and usable by individuals with disabilities." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citing § 12183(a)(1)). Whether a facility is "readily accessible" is defined, in part, by the ADA Accessibility Guidelines ("ADAAG"). *Id.* Thus, when a particular architectural feature of a place of public accommodation is inconsistent with the ADAAG, a plaintiff can bring a civil action claiming that the feature constitutes a barrier that denies the plaintiff full and equal enjoyment of the premises in violation of the ADA. *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 905 (9th Cir. 2011) (citing 42 U.S.C. §§ 2000a-3(a), 12188(a)(2)). Under the ADA, a plaintiff can sue only for injunctive relief, *i.e.*, for removal of the barrier. *Id.* To impose liability, the barrier does not need to completely preclude plaintiff from entering or using the facility; it need only interfere with the plaintiff's full and equal enjoyment of the facility. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011) (citing *Doran v. 7-Eleven Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2008) (discussing that the ADA "does not limit its antidiscrimination mandate to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA, thereby violating the ADA." *Chapman*, 631 F.3d at 947.

The 1991 ADAAG also includes a blanket "equivalent facilitation" provision, which provides that "[d]epartures from particular technical and scoping requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." 28 C.F.R. 36, § App. D § 2.2.

Therefore, to prevail on a Title III discrimination claim, the plaintiff must show that (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his or her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. § 12182(a)-(b). Defendants concede that the first two elements are satisfied. Therefore, this Court will analyze whether the five barriers alleged by the Plaintiff violated the ADAAG and thus constituted a barrier, denying the Plaintiff full and equal enjoyment of the premises in violation of the ADA.

B.   State Law Claims

Plaintiff also brings claims under California's Unruh Civil Rights Act ("Unruh Act"), the California Disabilities Act ("DPA"), and the California Health and Safety Code § 19955 *et seq*. *FAC* ¶¶ 9-53.

i.   *The Unruh Act*

The Unruh Act broadly outlaws arbitrary discrimination in public accommodations, including discrimination based on disability. *Jankey v. Sung Koo Lee*, 55 Cal. 4th 1038, 1044, 150 Cal. Rptr. 3d 191 (2012); Cal. Civ. Code § 51(b). In the disability context, the Unruh Act operates virtually identically to the ADA. *Molski*, 481 F.3d at 731. Any violation of the ADA necessarily constitutes a violation of the Unruh Act. *Id.* (citing Cal. Civ. Code § 51(f)). Where the basis of liability for an Unruh Act violation is an ADA violation, plaintiff need not prove intentional discrimination. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678, 94 Cal. Rptr. 3d 685

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

(2009). Moreover, the Unruh Act allows for monetary damages including automatic minimum penalties in the amount of $4,000 per occurrence, and attorneys' fees as "may be determined by the court." Cal. Civ. Code § 52. Proof of actual damages is not required to recover statutory minimum damages under the Unruh Act. *See, e.g., Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000).

    *ii.*    *The DPA*

The DPA substantially overlaps with and complements the Unruh Act, although it is narrower in focus. *Jankey,* 55 Cal. 4th at 1044. It ensures that people with disabilities have equal rights of access "to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation." *Id.* at 1044-45 (citation omitted). As with the Unruh Act, the California Legislature amended the DPA to incorporate ADA violations and make them a basis for relief under the act. *Id.*; Cal. Civ. Code §§ 54(c), 54.1(d). The DPA allows for monetary damages, including automatic minimum penalties in the amount of $1,000 per occurrence, and attorneys' fees for the prevailing party. Cal. Civ. Code § 54.3(a), § 55. Recognizing the overlap between the Unruh Act and the DPA, the Legislature expressly foreclosed recovery under both acts. Cal. Civ. Code § 54.3(c).

    *iii.*    *California Civil Code Section 55.56*

The California Legislature enacted the Construction Related Accessibility Standards Compliance Act ("CRAS") in 2009, embodied in California Civil Code sections 55.51-55.57, to improve compliance with disability access laws while protecting businesses from abusive access litigation. *See* Cal. Civ. Code §§ 55.51-55.57; *Munson*, 46 Cal. 4th at 677. This new legislation restricts the availability of statutory damages under the Unruh Act and the DPA. *Munson*, 46 Cal. 4th at 677.

Section 55.56 requires that a plaintiff seeking statutory damages under the Unruh Act or DPA show that the violation denied the plaintiff "full and equal access," which can occur only if the plaintiff "personally encountered" the barrier on a particular occasion or the plaintiff was deterred from accessing that place of accommodation on a particular occasion. Cal. Civ. Code § 55.56(a)-(b); *Munson*, 46 Cal. 4th at 677. Section 55.56(c) states, "[a] violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." *Id.* § 55.56(c).

Plaintiff and Defendant disagree on whether or not "difficulty, discomfort, or embarrassment" needs to be demonstrated in order to recover statutory damages under the Unruh Act or the DPA. *Pl. Trial Br.* 5:2- 6:2. Plaintiff argues that the Legislative intent behind this section was to codify existing case law, which never required a plaintiff to demonstrate actual damages in order to recover damages. *Pl. Trial Br.* 6:4-15:16. Defendant argues Plaintiff must demonstrate that he suffered "actual injury, embarrassment, humiliation, or discomfort." *Def. Trial Br*. 4:20-28.

A plain reading of the statute would allow for either interpretation. It is unclear whether a plaintiff personally encounters a violation *only* if he or she experiences difficulty, discomfort, or embarrassment, or if those experiences are one way, but not the only way, to personally encounter a violation. On the one hand, the use of the phrase "*may be* sufficient" connotes that difficulty, discomfort, or embarrassment are just three of many ways in which denial of full and equal access can be sufficiently shown because the lawmakers chose to use that phrase instead of something more demanding such as "only is sufficient." On the other hand, the first clause housing the "may be sufficient" language is dependent on the second, conditional "if" clause which discusses the showing of difficulty, discomfort, or embarrassment. This could demonstrate that difficulty, discomfort, or embarrassment is necessary to sufficiently demonstrate a denial of full and equal access.

One California Appellate Court has held that a plaintiff cannot recover statutory damages under section 55.56 absent evidence of difficulty, discomfort, or embarrassment. *Mundy v. Pro-Thro Enterprises,* 192 Cal. App. 4th Supp. 1, 6, 121 Cal. Rptr. 3d 274 (2011). In *Mundy*, even though a restroom mirror was mounted too high to be used by a wheelchair patron, the patron was not entitled to statutory damages under the Unruh Act because he failed to offer evidence that the mirror's height caused him difficulty, discomfort, or embarrassment. *Id.*

The Ninth Circuit has recently weighed in on this issue in an unpublished opinion, and this Court finds its ruling persuasive. Citing *Mundy*, the Ninth Circuit affirmed a district court's denial of statutory damages under the Unruh Act and the DPA to a plaintiff who did not prove that "he personally encountered the violation and 'experienced difficulty, discomfort, or embarrassment because of the violation.'" *Doran v. 7-Eleven, Inc*., Nos. 11-55031, 11-55619,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

2013 WL 602251, at *1 (9th Cir. Feb. 19, 2013) (citing Cal. Civ. Code § 55.56(c)). The Ninth Circuit continued that "a plaintiff who offers no such evidence [of physical or emotional harm] is 'not entitled as a matter of law' to recover statutory damages under the CRAS." *Id.* (citing *Mundy*, 192 Cal. App. 4th at 6). Therefore, this Court holds that Plaintiff must offer evidence of difficulty, discomfort, or embarrassment in relation to his personal encounter of a barrier in order to recover statutory damages under the Unruh Act or the DPA.

Further, per section 55.56(e), statutory damages are based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred. Cal. Civ. Code § 55.56(e).

   *iv.* *Health and Safety Code*

California Health and Safety Code section 19955 ("Health and Safety Code") requires that California public accommodations and facilities adhere to the state architect's regulations under Government Code 4450 to ensure all public accommodations are accessible to persons with disabilities. Cal. Health & Safety Code § 19955; Cal. Gov. Code § 4450. From December 31, 1981 to the present, the standards governing the physical accessibility of public accommodations in California have included those set forth in Title 24 of the California Regulatory Code ("Title 24"). *Moeller,* 816 F. Supp. 2d at 848.

Title 24 has an equivalent facilitation provision identical to the ADAAG. Cal.Code Regs. tit. 24 (2010) § 1101B.1.2. Title 24 also provides that "[i]n determining equivalent facilitation, consideration shall be given to means that provide for the maximum independence of persons with disabilities . . ." Cal.Code Regs. tit. 24 (2010) § 1101B.1.3.

The Health and Safety Code does not require the plaintiff to establish that he or she was individually denied access to the public accommodation; rather, it allows the plaintiff to enforce compliance (i.e., injunctive relief) with the handicapped access standards provided for by the Health and Safety Code and the Government Code. *Urhausen v. Longs Drug Stores California, Inc*, 155 Cal. App. 4th 254, 262, 65 Cal. Rptr. 3d 838 (2007). It also entitles the prevailing party in the action to attorneys' fees. Cal. Health & Safety Code § 19953.

IV. <u>Discussion</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

Now that the overarching applicable law has been set forth, this Court will examine each alleged barrier in turn and the claims associated with them.

A.  Barrier 1: Checkout Counter Too High to Accommodate Patron in Wheelchair

The 1991 ADAAG requires counters with cash registers that are provided for sales, including "counters in retail stores," to have a portion of the counter that is at least 36 inches in length with a maximum height of 36 inches above the floor. 28 C.F.R. § 36, App. D § 7.2(1). It allows for an auxiliary counter that meets these requirements if it is technically infeasible to alter a counter to the proscribed accessibility standard. 28 C.F.R. Part 36, App. D § 7.2(1).

To prove a prima facie case of violation of the ADA, Plaintiff must put forth evidence showing that the counter is higher than 36 inches. *Martinez v. Columbia Sportswear USA Corp.*, 859 F. Supp. 2d 1174, 1178 (E.D. Cal. 2002) ("Plaintiff has not provided any evidence regarding the height of the checkout counter at Eddie Bauer's Store. Therefore, this portion of Eddie Bauer's summary judgment motion is granted . . ."); *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) ("Plaintiffs bear the burden of establishing the existence of access barriers . . . "). Here, Plaintiff did not proffer evidence of *specific* counter height as part of his case-in-chief.

Plaintiff testified to estimates of the counter height based on an approximation of his lap height. Plaintiff bears the burden of showing a violation of the ADAAG. *Doran*, 524 F.3d at 1048. "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman*, 631 F.3d at 945-46. Courts generally require measurements to demonstrate ADA violations. *See, e.g.*, *Doran*, 524 F.3d at 1048; *Wilson v. Norbek, LLC*, No. CIVS040690DFLJFM, 2010 WL 1173053, at *4 (E.D. Cal. 2005). In *Strong v. Valdez Fine Foods*, 09-CV-01278 MMA, 2011 WL 455285, at *7-8 (S.D. Cal. 2011), the court lamented that the plaintiff was unable to give even an approximation of measurements for the barrier in question, but that even if the plaintiff's testimony had "contained additional detail, it would be insufficient to demonstrate the existence of actionable barriers because Plaintiff does not assert he is an ADA expert or is otherwise qualified to opine whether certain conditions constitute barriers within the meaning of the Act." *See also Wilson v. Tony M. Sanchez & Co., Inc.,* CIV S07-0822JAMGGH, 2009 WL 173249, *3 (E.D. Cal. Jan. 26, 2009) (holding that plaintiff's declaration, which provided various measurements, was "defective

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

because it contains opinions that constitute expert witness testimony" and plaintiff had not been disclosed as an expert). Plaintiff's expert report did not measure the height of the counter. Moreover, Plaintiff's expert did not testify at trial, nor was Plaintiff disclosed as an expert. Thus, Plaintiff did not present sufficient evidence of the counter height in his case-in-chief.

Plaintiff attempted to introduce photographs showing the specific height of the counter after presenting his case-in-chief. He alleged that a week prior to the trial, he went to the Store and measured the height of the counter.

The Court has broad discretion with regard to determining whether to permit rebuttal evidence. *General Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1509-10 (9th Cir. 1995). Here, the evidence is not rebuttal evidence because Plaintiff bore the burden of proving counter height as part of his case-in-chief. Moreover, Plaintiff failed to comply with his ongoing obligation to supplement Rule 26 disclosures. Under Federal Rule of Civil Procedure 26(a)(3)(A):

> [A] party must provide to other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment: . . . . an identification of each document or other exhibit, including summaries of other evidence – separately identifying those items the party expects to offer and those it may offer if the need arises.

Fed. R. Civ. P. 26(a)(3)(A). The timing of such a disclosure must be made at least thirty days before the trial. Fed. R. Civ. P 23(a)(3)(B). Moreover, "if the party learns that in some material the disclosure or response is incomplete or incorrect," it must supplement the disclosure. Fed. R. Civ. P 26(e)(1). Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Strict compliance with Rule 26 is also required in the Court's Order for Court Trial. Dkt. # 75. The sanction of exclusion of evidence is automatic unless the party facing sanctions can show that the failure to comply is substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (approving the district court's decision to exclude a rebuttal witness because his expert report was produced only 28 days before trial). No showing of bad faith is required. *Id.*

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

  Here, the failure to supply the evidence was not substantially justified or harmless. Plaintiff indicated in his initial Rule 26 disclosures that he would produce "miscellaneous photographs of the location." *Meer Decl.*, ¶ 4, Ex. A, at 1. However, Plaintiff never produced the pictorial evidence to Defendant, even after claiming he would produce the photographs in response to repeated written discovery requests. *Meer Decl.*, ¶ 5, 7; Ex. B at 2, 5, 9, 10; Ex. C at 3, 10, 11. Plaintiff offers no reason for the failure to produce the pictorial evidence prior to trial. Plaintiff only argues that it would have been impossible to produce the evidence sooner because he went to the Store a week prior to trial. However, this argument lacks merit because Plaintiff served documents on Defendant the day before trial. *Meer Decl.*, ¶ 18.

  Plaintiff should not be rewarded for his attempt to obviate discovery by waiting until a week before trial to take such pictures, failing to produce the pictures to Defendant prior to trial, and failing to prove the measurement of the counter in his case-in-chief.

  Given that Plaintiff provided only very rough estimates of the counter height based on personal estimations and unsupported by any specific measurements or expert testimony, the Court concludes Plaintiff has not met his burden of showing a violation of the ADAAG. Therefore, Plaintiff cannot prevail on the ADA claim relating to his allegation that the checkout counters were too high. *Martinez*, 859 F. Supp. 2d at 1178.

  Because Plaintiff's Unruh Act and DPA claims associated with this barrier are predicated on Defendant's violation of the ADA, this Court finds Defendant did not violate the Unruh Act or the DPA in relation to this barrier.

  The Health and Safety Code differs from the ADA with regard to height of sales counters. Title 24 requires all sales counters to be "accessible". *Lieber,* 80 F. Supp. 2d at 1075. "Sales employee work stations shall be located on accessible levels, and the customer side of sales or check-out stations shall be accessible." Cal. Reg. Code tit. 24, § 1110B.1.2. "This can be accomplished either through lowering cashwraps or providing some other mechanism, such as a clipboard or lowered shelf, to provide access." *Shimozono v. May Dept. Stores Co.*, No. 00-04261 WJR (AJWx), 2002 WL 34373490, *16 (C.D. Cal. Nov. 20, 2002) (citing *Lieber*, 80 F. Supp. 2d at 1075). Courts have reasoned that for a sales counter to be "accessible," it must either meet the 36" height requirement imposed by the ADAAG or have a clipboard or other mechanism consistently made available to customers with disabilities to ensure accessibility. *Lieber*, 80 F. Supp. 2d at 1075.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

In *Lieber*, the court found that to comply with the ADAAG and Title 24, the defendant retail store was required to either meet the 36-inch height requirement for its check out stations or have clipboards consistently available to customers with disabilities to ensure accessibility. *Id.* The court found that clipboards were acceptable because § 1110B.1.2 does not specifically define what constitutes an "accessible" sales counter. *Id.* By contrast, the language of § 1110B.1.3, which governs checkstands, does define "accessibility" as a specific counter height. *Id.* The court interpreted the exclusion of a particular counter height in § 1110B.1.2 to mean that a clipboard was an equivalent facilitation for purposes of Title 24. *Id. See also Shimozono*, 2002 WL 34373490 at *16 (recognizing that *Lieber* indicated that providing a clipboard makes the customer side of sales counters accessible under § 1110B.1.2).

Because this case similarly involves the customer side of a sales counter, § 1110B.1.2 governs. Based on *Lieber* and *Shimozono*, this Court finds that clipboards constitute an equivalent facilitation under the Health and Safety Code. Store policy is to provide clipboards if requested or if a clerk observes that clipboards are needed. Because Store policy is to provide clipboards as an equivalent facilitation, Plaintiff has failed to prove that Defendant violated the Health and Safety Code.

Thus, Plaintiff has not proven a violation of any law with regard to the barrier of the height of the checkout counter.

   B.   <u>Barrier 2:  Pay Point Machine Was Too High</u>

Plaintiff alleges the Store's pay point machine was "too high." The evidence demonstrates there was no pay point machine at the facility in question; therefore, the claims in relation to this barrier are without merit.

   C.   <u>Barrier 3:  Dressing Room Bench Was Not Appropriately Long or Wide</u>

Under the 1991 ADAAG, "[e]very accessible dressing room shall have a 24 in by 48 in . . . bench fixed to the wall along the longer dimension . . . Clear floor space shall be provided alongside the bench to allow a person using a wheelchair to make a parallel transfer onto the bench." 28 C.F.R. Part 36, App. D § 4.35.4. The 1991 ADAAG also includes an equivalent facilitation provision, discussed above. *Id.* § 2.2. New ADAAG regulations were adopted in 2010, which went into effect on March 15, 2012. These new guidelines offer a safe harbor for

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

existing facilities that have complied with the 1991 standards. *See* 28 C.F.R. Part 36.304(d)(2)(i).

    Plaintiff argues the Defendant does not comply with the ADAAG guidelines because the dressing room bench is not exactly 48 inches long, which the plain language ("shall") of the statute mandates. Defendant's expert testified that the 48-inch requirement has been interpreted as a minimum standard. Moreover, Defendant argues that a bench that is greater than 48 inches is an "equivalent facilitation" because it provides substantially equivalent or greater access the facility. Defendant's expert testified that a 60-inch bench would be considered an "equivalent facilitation" under the ADAAG, and that it would be dangerous to have a 12-inch space between the wall and a 48-inch bench because things could fall down or a disabled patron could slip off the end. The Defendant's expert further testified that a bench from wall to wall is more secure.

    Plaintiff argues that the bench's length prohibited Plaintiff from making a diagonal transfer onto the bench and was thus an architectural barrier that prevented him from enjoying full and equal access to the Eddie Bauer facility. However, section 4.35.4 only requires a bench to allow for parallel transfers; it does not address the necessity of making diagonal transfers. *See* 28 C.F.R. § 36, App. A, § 4.35.4. Because Plaintiff could have transferred onto the bench, it would have been dangerous to have a 12-inch gap, and a wall-to-wall bench is more secure, the 60-inch bench in this case provided at least "substantially equivalent" access to a 48-inch bench, and thus is an "equivalent facilitation" in compliance with the 1991 ADAAG standards. *See e.g., Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1230 (S.D. Cal. 2011) (finding a 64-inch dressing room bench was an equivalent facilitation under the 1991 ADAAG bench dimension requirement). Therefore, Defendant did not violate the ADA with respect to the dressing room bench length.

    Because Plaintiff's Unruh Act and DPA claims associated with this barrier are predicated on Defendant's violation of the ADA, this Court finds Defendant did not violate the Unruh Act or the DPA in relation to this barrier.

    Title 24 has guidelines for dressing room bench length identical to the ADA. *See* Cal. Reg. Code tit. 24, § 1117B.8. Moreover, Title 24 also has an equivalent facilitation provision identical to the ADAAG. Cal. Code Regs. tit. 24 (2010) § 1101B.1.2. Therefore, because there is no ADA violation, the Court finds that Defendant did not violate the Health and Safety Code in relation to this barrier.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

D.   Barrier 4:  Absence of an International Symbol of Accessibility ("ISA") Sign

Under the 1991 ADAAG, accessible entrances to a building must be identified with an ISA sign when not all entrances are accessible.  28 C.F.R. Part 36, App. D § 4.1.2(7)(c).  Because Defendant does not argue that all entrances to the Store are accessible and that therefore the sign posting is unnecessary, this Court will presume that not all entrances are accessible.  The Parties agree that an ISA sign was not posted on the June 26, 2010 visit, but has since been posted to the Store entrance.

As discussed above, if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA, thereby violating the ADA." *Chapman*, 631 F.3d at 947.  Plaintiff is in a wheelchair and therefore needs to know if entrances are accessible in order to access public accommodations.  Thus, the lack of an ISA sign posted at a store entrance indicating accessibility relates to the Plaintiff's disability.  Because the lack of a posted sign violates the ADAAG and relates to his disability, this barrier constitutes discrimination under the ADA.  The posting of an ISA sign is easily accomplished and therefore meets the "readily achievable" standard.  Therefore, this barrier violated the ADA.

Because the only relief available under the ADA is injunctive, the fact that an alleged barrier has been remedied renders the issue moot for purposes of Plaintiff's ADA claim.  *See e.g.*, *Hubbard v. 7–Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006) (citation omitted).  Because Defendant has posted an ISA to the front of the Store, Plaintiff's ADA claim in relation to this barrier is moot.

However, damages are still available under the Unruh Act and the DPA; therefore, the Court is obligated to analyze the ADA violation in relation to Plaintiff's state law claims.  *See Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1069 (E.D. Cal. 2006).  A violation of the ADA constitutes a violation of the Unruh Act and the DPA.  Cal. Civ. Code §§ 51(f), 54(c).  However, as discussed above, to recover statutory damages under the Unruh Act or the DPA, the violation must deny the plaintiff full and equal access on a particular occasion, meaning the plaintiff must either personally encounter the violation or be deterred from accessing the place of public accommodation.  Cal. Civ. Code § 55.56(a)-(b).  Here, Plaintiff was not deterred from accessing the Store as he testified he had no problem entering the Store.  Therefore, Plaintiff must "prove that he personally encountered the violation and experienced 'difficulty, discomfort,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

and embarrassment because of the violation.'" *Doran v. 7-Eleven, Inc.*, 2013 WL 602251, at *1 (citing Cal. Civ. Code § 55.56(c)). Plaintiff conceded that he experienced no difficulty nor suffered any physical or emotional harm from encountering the lack of an ISA sign at the Store entrance, only that he felt it was a lack of respect. "A plaintiff who offers no such evidence [of physical or emotional harm] is 'not entitled as a matter of law' to recover statutory damages under the CRAS." *Id.* (citing *Mundy*, 121 Cal. Rptr. 3d at 278). Therefore, Plaintiff is not entitled to recover damages under the Unruh Act or the DPA in relation to this barrier.

Under Title 24, entrances to buildings and facilities that are accessible to and usable by persons with disabilities are required to have at least one ISA sign posted. Cal. Reg. Code tit. 24, § 1117B.5.8.1.2. Therefore, this barrier violated the Health and Safety Code on the date of Plaintiff's visit. However, the Health and Safety Code only provides for injunctive relief. Therefore, because Defendant has since posted an ISA sign to the Store's entrance, Plaintiff's Health and Safety Code claim in relation to this barrier is moot.

E.    Barrier 5: Aisles That Were Too Narrow to Allow Plaintiff to Pass

The ADAAG does not contain any specific spacing requirement for movable merchandise display racks. *Lieber*, 80 F. Supp. 2d at 1077. The ADAAG regulatory spacing requirement of 36 inches for self-service merchandise units applies to fixed display units. *Id.* The ADA's "physical access" requirement does not mandate 36 inches of clearance on all sides of a moveable display rack, nor even on one side. *Id.*; 28 C.F.R. § 36, App. D, § 4.1.3 (12)(b). Therefore, the spacing of movable display racks is a barrier under the ADA, but is governed by the more general "readily achievable" standard. *E.g.*, *Lieber*, 80 F. Supp. 2d at 1077. "The rearrangement of temporary or movable structures, such as furniture, equipment or display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f). Isolated or temporary interruptions in service or access due to maintenance or repairs are permitted. 28 C.F.R. §36.211 (b).

Title 24 requires "shelves and display units allowing self-service by customers in mercantile occupancies" to be located on an accessible route of travel which has a clear width of at least 36 inches." Cal. Regs. Code tit. 24 (2010) § 1110B.2.1.

Given Plaintiff's vague testimony of "too much clothing on the floor," his ability to navigate throughout the Store on June 26, 2010, the store's policy of maintaining 48 inch aisles and moving any merchandise upon request, the Court concludes that Defendant did not violate

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4680 PSG (PJWx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | Chris Kohler v. Presidio International, Inc., *et al.* | | |

the ADA with relation to this barrier. Therefore, Defendant did not violate the Unruh Act or the DPA in relation to this barrier. Moreover, the Court concludes that since Plaintiff was able to navigate throughout the Store, demonstrating there were accessible circulation paths throughout the Store, Defendant did not violate the Health and Safety Code in relation to this barrier.

IV.     Conclusion

For the foregoing reasons, the Court finds that Defendant violated the ADA in relation to only one barrier, the ISA sign. This barrier has since been corrected and thus rendered moot under the ADA. Moreover, although Defendant violated the Unruh Act or the DPA in relation to this barrier, Plaintiff is not entitled to statutory damages under the CRAS because he did not prove that he suffered any physical or emotional harm in relation to the barrier.

Defendant is ordered to prepare a judgment consistent with this Order to be filed with the Court no later than **April 8, 2013**.

**IT IS SO ORDERED.**